IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS F. WELLS, | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-1266 |
| | ) | Chief U.S. Magistrate Judge Amy Reynolds Hay |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
|     Defendant | ) | |

<u>MEMORANDUM OPINION</u>

HAY, Chief Magistrate Judge

Acting pursuant to 42 U.S.C. 1383(c)(3), Thomas Wells ("Wells" or "the Claimant") appeals from an August 8, 2009 decision of the Commissioner denying his application for supplemental security income benefits. Cross Motions for Summary Judgment are pending. The Motion filed by Wells (Doc. 7) will be denied, and the Motion filed by the Commissioner (Doc. 12) will be granted.

**Background**

On April 16, 2007, Wells protectively filed an application for supplemental security income benefits, alleging that he became disabled on October 1, 1980 due to blindness in his left eye, impaired vision in his right eye, borderline intellectual functioning, and a history of alcohol abuse. This claim was denied initially in a decision dated August 1, 2007. (T. 53). Wells then requested a hearing which took place in Johnstown, Pennsylvania on October 16, 2008. (T. 29). The Claimant, who was represented by counsel, testified, as did a vocational expert. On January 21, 2009, the Administrative Law Judge ("ALJ") issued a decision in which he found that Wells was not disabled. (T. 20). A request for review was denied by the Appeals Council on August 8,

2009, making the ALJ's opinion the final decision of the Commissioner. This appeal followed.

**Standard of Review**

The Social Security Act ("the Act") limits judicial review of the Commissioner's final decision regarding benefits to two issues: whether the factual findings are supported by substantial evidence, Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984). "Where the ALJ's findings of fact are supported by substantial evidence, [the Court is] bound by those findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

**The ALJ's Opinion**

The ALJ arrived at his finding that Wells was not disabled within the meaning of the Act by applying the sequential five step analysis articulated at 20 C.F.R. § 416.9020(a).[1] A claimant bears the burden of proof at the first four steps, and the Commissioner bears the burden at the fifth. See Fargnoli, 247 F.3d at 39. The ALJ resolved this matter at Step Five.

At Step One, the ALJ found that Wells had not engaged in substantial gainful activity since the date of his protective filing. (T. 22). At Step Two, the ALJ concluded that the

---

[1]The familiar five steps are as follows: (1) If the claimant is performing substantial gainful work, he is not disabled; (2) If the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled; (5) Even if the claimant's impairment or impairments prevent him from performing his past work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

Claimant had "the following severe impairments: left eye blindness, poor vision in the right eye due to congenital cataracts and amblyopia, major depressive disorder, recurrent, moderate, borderline intellectual functioning, and a history of alcohol abuse." (Id.). He found at Step Three that none of these impairments met or was equivalent to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. First, the ALJ considered Wells's visual impairments under Listing 2.00, which addresses special senses and speech, finding that "the medical evidence of record does not contain the objective signs, symptoms, or findings, nor the degree of functional restriction[ ] necessary for the claimant's impairment[ ] to meet or equal any section of [that] Listing," (id.), and that no "medical source of record . . . opined that the claimant's visual impairments either meet or equal a listed impairment." (T. 23).[2]

At Step Three, the ALJ also addressed the criteria for Affective Disorders at listing 12.04, Mental Retardation at listing 12.05, and Substance Addiction Disorders at 12.09, concluding that Wells did not satisfy the criteria specified for these listings, either alone or in combination.[3] The ALJ wrote:

---

[2] The ALJ recognized that Wells has a history of blindness in his left eye and compromised vision in his right eye. Dr. Vittone conducted a ophthalmologic examination in July 2007, reporting that Wells had approximately 20/70 vision in his right eye. (T. 25). In August 2008, Dr. D'Onofrio, also an ophthalmologist, concluded that Wells's vision in his right eye was 20/50, that he had no eye pain or discomfort, and that his functional vision was excellent. Dr. D'Onofrio found that the Claimant's right eye was stable, and that although Wells should be employed in a capacity that required little visual need, he had no permanent disability and could, in fact, work. (Id.). Wells does not challenge the ALJ's conclusion with respect to this evidence.

[3] He also concluded that Wells's impairments failed to meet the "C" criteria of listing 12.04 in that there was no evidence that Wells had experienced repeated episodes of decompensation of extended duration, "a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or changes in the environment would cause an episode of decompensation, or an inability to function outside of a highly supportive living arrangement." (T. 24).
With respect to listing 12.05, the ALJ found that its "B" criteria were not met because Wells did not have a valid verbal, performance, or full scale IQ of fifty-nine or less - his lowest score was seventy-

3

> To satisfy the "paragraph B" criteria ("paragraph D" criteria of
> listing 12.05), the mental impairments must result in at least two of
> the following: marked restriction of activities of daily living;
> marked difficulties in maintaining social functioning; marked
> difficulties in maintaining concentration, persistence, or pace; or
> repeated episodes of decompensation, each of extended duration.

(Id.).

Before moving to Step Four, the ALJ reviewed the record evidence, including Wells's testimony, and assessed his residual functional capacity:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but with the
> following nonexertional limitations: the claimant can only handle
> objects such as a coffee mug and larger due to loss of vision in one
> eye. In addition, the claimant is limited to simple, routine, low
> stress work, with no public interaction, and only occasional
> interaction with co-workers and supervisors, and must avoid
> ladders, ropes, scaffolds, unprotected heights, and moving
> machinery.

(T. 25). Although the ALJ found at Step Four that Wells had no past relevant work, (T. 26), he concluded, based on Wells's residual functional capacity and testimony offered by the vocational expert, that Wells was capable of performing work available in significant numbers in the national economy. (T. 28). As a result, the ALJ, at Step Five, determined that Wells was not disabled within the meaning of the Act.

## IV. DISCUSSION

Wells contends that the ALJ erred in: (1) failing to accord controlling weight to the

---

two - and that the listing's "C" criteria could not be satisfied because the Claimant did not have a valid verbal, performance, or full scale IQ of sixty through seventy, *and* another physical or other mental impairment imposing an additional and significant work-related limitation or function. (T. 24-25). The Claimant does not challenge the ALJ's analysis of the 12.05 or 12.09 listings.

opinion of clinical psychologist, Lindsey Groves; (2) failing to comply with SSR 96-9P by asking the vocational expert whether a hypothetical individual with the Claimant's visual impairments could work with large objects; (3) finding that the Claimant did not meet the Listings of Impairments for affective disorders, Section 12.04; (4) failing to consider Wells's severe and non-severe impairments in the formulation of his residual functional capacity; and (4) finding that the Claimant is capable of meeting the exertional demands of heavy work. The Court considers these arguments seriatim.

**The ALJ's Failure to Give Controlling Weight to the Opinion of Dr. Groves**

The record shows that on November 12, 2008, Wells underwent a three hour psychological evaluation at Kreinbrook Psychological Services in Greensburg, Pennsylvania. The results of this evaluation are summarized in a report signed by Lindsay A. Groves, Psy. D. ("Groves") and Dennis Kreinbrook, Ph.D. ("Kreinbrook"), and in a Mental Impairment Questionnaire dated December 1, 2008 and signed by Groves (T.153-160). The ALJ discussed this evidence, acknowledging Groves's conclusion that the Claimant "had extreme restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and 3 episodes of decompensation, each of extended duration." (T. 27). [4] The ALJ found, though, that these conclusions were inconsistent with the totality of the evidence:

> [T]he claimant had no ongoing medical treatment, medications, or recent hospitalizations for his conditions. Moreover, Dr. Groves only examined the claimant on one occasion and rated his GAF at 55, which is indicative of only moderate symptomatology or

---

[4]Implicit in these findings is the conclusion that Wells satisfied the criteria for an affective disorder under listing 12.04.

> moderate difficulty in social, occupational, or school functioning;
> [the report] also indicated that the claimant had logical and
> organized thoughts without difficulty expressing them. Likewise,
> [the] opinion is based in large part upon [Wells's] subjective
> allegations. Further, . . . the claimant does not allege any
> problems with concentration, memory, completing tasks,
> understanding or following instructions. Finally, Dr. Groves'
> opinion is inconsistent with the claimant's self-reported activities
> of daily living.

(Id.). Consequently, the ALJ gave "little weight" to Groves's opinion in determining the Claimant's residual functional capacity, and declined to rely on her conclusion that Wells met the criteria for an affective disorder set out at listing 12.04. The ALJ found that Wells had mild limitations in his activities of daily living, moderate limitations in social functioning, and moderate limitations as to concentration, persistence, or pace.[5] Wells contends that this was error: "Dr. Groves' opinions must be given controlling weight and adopted because her medical psychological opinion is well supported and not inconsistent with other substantial evidence in the case record." (Doc. 8 at 10). In support of this statement, the Claimant cites SSR 96-2P, which clarifies when a treating source's medical opinion is entitled to controlling weight.

      The regulations make clear that Groves does not qualify as a treating source. The introductory paragraph to the psychologists' report establishes that Wells "was referred by his

---

[5]The ALJ noted Wells's testimony that he was able to prepare simple meals on a daily basis, attend to his personal needs, watch television, listen to music, make coffee, clean his house, do laundry, take out the trash, and get the mail. He could talk on the phone, and shop daily or weekly, assuming that he could get a ride to the store. There was no evidence that Wells had been fired, or involved in altercations, evictions, domestic disputes, or other legal difficulties. Furthermore, he was able to interact effectively with his attorney and the ALJ at his hearing, and did not engage in socially inappropriate behavior. (T. 23). These daily activities and his IQ scores indicated that Wells was capable of performing simple, routine, low-stress work. (T. 24). There was no evidence showing that the claimant had suffered even a single instance of decompensation, or that he had been treated by a mental health clinician. (T. 24).

6

attorney . . . for a psychological evaluation . . . to be used as part of the information to be

presented in his social security disability claim." (T. 147). The Commissioner, however, will not "consider an acceptable medical source to be [a] treating source if [the] relationship with the source is not based on . . . medical need for treatment or evaluation, but solely on the need to obtain a report in support of the claim for disability." 20 C.F.R. § 416.902. "Controlling weight may be given only in appropriate circumstances to medical opinions . . . from treating sources." SSR 96-2P.

The ALJ was not obligated to give controlling weight to the conclusions of either psychologist, and explained clearly and thoroughly his reason for according them "little weight." In doing so he relied, as he was entitled to do, "not only on what the record [said], but what it did not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). See also Lane v. Comm'r, 100 Fed. Appx. 90, 95 (3d Cir. 2004) (citing Dumas for proposition that "lack of medical evidence is very strong evidence that [claimant was not disabled"). The Court has carefully reviewed all of the record evidence and is satisfied that it amply supports the ALJ's treatment of the psychologists' conclusions.

**Adequacy of the ALJ's Hypothetical Question**

Wells next contends that in addressing the availability of light work, the ALJ failed to comply with SSR 96-9P [6] when he asked the vocational expert whether a hypothetical individual

---

[6]This Ruling pertains to the implications of a residual functional capacity for less than a full range of sedentary work - an exertional classification that is not at issue here. The section of this ruling entitled **Visual limitations or restrictions** reads:

> Most sedentary unskilled occupations require working with small objects. If a
> visual limitation prevents an individual from seeing the small objects involved in
> most sedentary unskilled work . . . there will be a significant erosion of the

7

with the Claimant's visual impairments could work with large objects. "[T]he ALJ should have asked . . . if [Wells] with his visual impairments was capable of working with small objects." (Doc 8 at 7). This argument lacks merit in view of the fact that the ALJ did not find that Wells was restricted to, and the vocational expert did not offer testimony regarding light work.

The first substantive questions posed to the vocational expert read as follows:

> Q  I want you to assume someone with a special education background who does not have a high school diploma. I'd like you to consider this hypothetical of somebody with the claimant's age, education, training and work experience. Assume no exertional limitations, however, [the] person has vision only in one eye. The person would have to work with objects in a work area, preferable a work table right in front of them and they would have to be larger objects so let's say at least the size of a coffee mug or something like that. The work needs to be simple, routine, low stress with no deadlines or fast paced production. There should be no public interaction and no more than occasional interaction with co-workers and supervisors. Assuming these limitations are there any jobs at least at the light level that you could suggest?
>
> A  At the light level?
>
> Q  Light, medium or heavy, yes.

(T. 19-20).

The vocational expert did not address sedentary or even light work, but instead discussed medium and heavy jobs that could be performed by a person falling within the hypothetical parameters. The Claimants's attorney then questioned the expert regarding whether the jobs identified could be performed by a person with an IQ of 72 who lacked depth perception. The

---

sedentary occupational base.

expert testified that these additional criteria could eliminate the job of material handler, but that there were still jobs available in significant numbers in the national economy that could be performed consistent with these limitations.

Given that the vocational expert was able to identify jobs available in medium and heavy occupational classifications which could be performed in spite of the totality of Wells's limitations, the failure to address the Claimant's ability to see small objects in the course of sedentary work is irrelevant.

### The Alleged Failure to Consider Non-Severe Impairments in Formulating the RFP

This section of the Claimant's argument, which is inextricably intertwined with his contention that the ALJ erred in finding that Wells could meet the exertional demands of heavy work, reflects both a misunderstanding of the law and a misreading of the ALJ's opinion. These deficiencies are best illustrated by the following question posed in the Claimant's brief: "How can the ALJ on the one hand state that the Plaintiff's work has been compromised by his non-exertional limitations and then go on to conclude that the Plaintiff is capable of heavy work for jobs in the national economy at all skill and physical demand levels?" (Doc. 8 at 12). First, and most fundamentally, *nowhere* in his opinion does the ALJ conclude that Wells is capable of performing skilled work at any exertional level. Consequently, the Court does not consider that portion of the Claimant's argument which is addressed to the ALJ's supposed assessment of the Claimant's skills. What the ALJ *did* say in formulating Wells's RFC was that Wells had the capacity to perform a full range of work at all exertional levels. (T. 25).

The term "exertional capacity addresses an individual's limitations and restriction of physical strength and defines the individual's remaining ability to perform each of seven strength

demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-9P. "Initially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities." Id. Thus, when the ALJ wrote that Wells was capable of performing a full range of work at all exertional levels, he found that Wells had the physical capacity to perform all - or substantially all - of the *unskilled* occupations existing at the exertional level in question. See SSR 83-10.

Once the ALJ reached this conclusion, he did exactly what the Claimant alleges that he failed to do - he considered whether there were non-exertional impairments that affected the Claimant's ability to perform this full range of occupations at each level.[7] He wrote, "The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations." (T. at 28). The ALJ then determined whether, given these non-exertional limitations, the occupational base of unskilled work at all exertional levels would be eroded to the extent that there were no jobs existing in significant numbers in the national economy that Wells was capable of performing. The ALJ did this by posing a hypothetical question to the vocational expert that included each non-exertional impairment substantiated by the record.[8] Even when these were taken into account, appropriate jobs existed.

---

[7]Contrary to the Claimant's assertion, the ALJ did not apply Section 204 of the Medical-Vocational Guidelines in assessing Well's non-exertional impairments. Wells himself states: "[T][he ALJ concluded that the Plaintiff is capable of heavy work under Section 204.00." (Doc. 8 at 11). This is precisely how the grids are to be used - to evaluate exertional capacity. See, e.g. Burnam v. Schweiker, 682 F. 456, 458 (3d Cir 2007).

[8]Wells reasserts in this argument that the ALJ improperly rejected the psychologists' finding that Wells had markedly limited concentration and task persistence, resulting in poor ability to manage change, deadlines, and schedules. The Court finds that this evidence was adequately addressed in the formulation of Wells's RFC, which limited him to simple, routine, low stress work, with no public interaction, and only occasional interaction with co-workers and supervisors.

**Conclusion**

For the reasons set out above, the Court finds that the ALJ's decision is supported by substantial evidence and does not rest on a misapplication of the law. Thus, the Motion for Summary Judgment filed by the Commissioner (Doc. 12) will be granted, and the Motion for Summary Judgment filed by Wells (Doc. 7) will be denied. Appropriate Orders follow.

By the Court,

/s/*Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 8 July, 2010

cc: Counsel of Record via CM-ECF